Abthub D. Beennaít, J.
In this action brought to recover the down payment made under a contract for the sale of an unimproved tract of approximately 45 acres, the plaintiff moves for summary judgment. The defendants also seek summary judgment.
The subject contract contains a provision that “ The seller shall give and the purchaser shall accept title such as the Inter-County Title Guaranty & Mortgage Company or Title Guar *910 antee & Trust Company will approve and insure Directly after the signing of the contract, the plaintiff ordered a title policy from the Title Guarantee & Trust Company as well as a survey. On or about October 15, 1955, plaintiff’s attorney received a title report which stated, among other things, that the title was subject to “rights of others .to the natural and unobstructed flow of the brook crossing premises ”. Certain other so-called exceptions were contained in said report but no question has been raised with respect, thereto. It is the contention of the plaintiff that this last-quoted provision contained in the title report was in violation of the above-mentioned provisions of the contract and that by reason of said report, the title company had refused to approve and insure (the subject premises) unconditionally and without exceptions. In support of its claim herein, the plaintiff relies upon the well-established principle that where a contract provides that the seller shall give, and the purchaser shall accept, a title such as a designated title company will approve and insure, the seller assumes the burden of delivering- a title which the specified title company will approve and insure unconditionally and without exceptions. (New York Investors v. Manhattan Beach Bathing Parks Corp., 256 N. Y. 162; Eastman v. Horne, 205 N. Y. 486; Weiss v. Sachs, 112 N. Y. S. 2d 97.)
It appears that the aforesaid title report,' dated October 14, 1955, was delivered to the plaintiff’s attorney the next day. The contract provided for the closing of title on October 31, 1955. Between October 27, 1955 and November 23, 1955, the closing of title was adjourned at the request of plaintiff’s attorney on several occasions. On the occasion of one adjournment had on November 7, 1955, the plaintiff’s attorney notified the defendants’ attorney that the examination of title had been completed and that there were no objections of any kind to the title. It was not until November 18, 1955, five days before the adjourned date for closing, that plaintiff’s attorney notified the defendants’ attorney of the above-quoted provision being contained in the title report. By letter, dated November 23, 1955, plaintiff’s attorney advised the attorney for the defendant seller that the buyer was unwilling to accept title to the property unless the title company would agree to issue a title policy without the above-quoted provision contained therein. It may be noted, at this point, that there is no contention on the part of the defendant seller that the plaintiff should have applied for title insurance • to the other title company named in the contract.
*911 In considering the problem at hand, it should be remembered that by the above-quoted clause contained in the contract, the parties had in mind the desirability of a title upon which a policy of insurance would be issued, and by the insurance of which, a future sale or mortgage of the subject premises would be facilitated, in the event that the buyer should desire to sell or mortgage the same. In this court’s view, by the aforesaid quoted clause, the agreement contemplated such a policy of insurance as would not contain any matter, item or thing which constituted a defect or an incumbrance nor any other matter with respect to which there was any possibility or probability of any defect, cloud, claim or incumbrance entailing the determination of a court before the same could be adjudged to be of no effect upon the title and without effect upon its marketability. (Beinhauer v. Morris, 142 App. Div. 398.)
It is important to observe that the plaintiff makes no claim that the brook in question pursues a course which is other than the course of its natural channel or that it has been lowered or lifted from its natural bed. The fact that the plaintiff, after acquiring title, would be prevented from interfering with the natural flow of the brook by reason of the rights that the upper or lower proprietors may have with respect to the natural flow thereof is a matter bearing upon the future use of the subject premises but such fact is not determinative of the crucial issue presented herein, said issue being whether the title company has refused to approve and insure the title unconditionally and free from exceptions of actual or possible defects or incumbrances. Our Court of Appeals, in 1929, definitely established the proposition that where, as here, a brook exists on, and proceeds in its natural bed and course in and across, the premises which are the subject of a contract of sale, the same does not constitute an easement, encroachment, incumbrance or defect in title. (Kleinberg v. Ratett, 252 N. Y. 236.) In this court’s view, the title company, by the above-quoted provision contained in its title report, was merely observing and calling to the purchaser’s attention the fact that a brook was present on the premises to be conveyed and that, under the law, the upper and lower proprietors possessed rights which required that the brook proceed across the subject premises in its natural course with undiminished flow. It cannot be held that by its issuance of the subject title report, containing the aforesaid observation which does not consist of an easement, encroachment, incumbrance or defect, the title company has refused to approve and insure title unconditionally and without exceptions to the title. On the contrary, this court holds that by said *912 report, the designated company has so approved and agreed to insure said title.
Accordingly, the plaintiff’s motion is denied and the defendants are granted summary judgment dismissing the complaint, with costs. Settle order and judgment on notice.